**STATE of Missouri, Respondent,**

v.

**George BIGGS, Appellant.**

**No. SC 90775.**

Supreme Court of Missouri,
En Banc.

March 1, 2011.

Rehearing Denied March 29, 2011.

---

474

G. Michael Baker, Springfield, for Appellant.

James B. Farnsworth, Attorney General's Office, Jefferson City, for Respondent.

MICHAEL A. WOLFF, Judge.

George Biggs was tried and found guilty of child abuse after his son, age 7, was found to have suffered extensive bruising after spending approximately five weeks with his father. Biggs challenges the admission of statements that the boy made to his mother and to authorities who investigated the bruising.

The boy suffered from a medical condition that rendered him unable to control his bowels. Due to this medical condition, the boy frequently defecated in his pants, often without realizing that he had done so. The boy's mother picked him up from Biggs' house; on the ride home, the boy asked her if he could lie down because his bottom hurt. He explained that his buttocks were bruised.

After arriving home, the mother asked the boy if she could see his bruises. He pulled his pants down and showed her bruising all along his buttocks, extending to his upper thighs and the sides of his legs. When asked what happened the boy said his dad "whopped [his] butt." He said that when he would defecate on himself, the boy's father, Biggs, would take him into the master bedroom, bend the boy over the bed naked and spank him with a belt.

The mother called the police. Curt Ringgold, the responding officer, spoke with the boy and photographed his injuries. The boy told Ringgold that his father often "whopped" him. Ringgold reported that the boy's bruising was consistent with belt strikes. Ringgold also testified at Biggs' trial that the bruises were in various stages of healing—indicating that the bruises had been inflicted at different times.

The boy was then taken to the Child Advocacy Center in Springfield. Rachel Happel, a forensic interviewer, conducted a recorded interview during which he said that when he stayed with Biggs he was "whopped" with a belt as punishment when he "pooped himself." The boy said that his father "whopped him" "every day and night" and that the beatings caused bruises.

After an investigation by the Springfield special victims unit, Biggs was charged with abuse of a child under section 568.060, RSMo 2000.[1]

Prior to trial the state notified Biggs that it intended to use the boy's out-of-court statements to his mother, Happel, Ringgold and Gayla Hancock, the child's godmother. Biggs filed objections to the state's motion, arguing that section 491.075—by admitting hearsay statements as substantive evidence—violates the confrontation clause of the United States Constitution and improperly bolsters witness testimony.

The trial court held a hearing as required by section 491.075 to determine whether there were sufficient indicia of reliability.[2] At the hearing the child's

1. A person commits the crime of abuse of a child if such person:
 (1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old; or
 (2) Photographs or films a child less than eighteen years old engaging in a prohibited sexual act or in the simulation of such an act or who causes or knowingly permits a child to engage in a prohibited sexual act or in the simulation of such an act for the purpose of photographing or filming the act.
 Section 568.060, RSMo 2000. All citations to RSMo are to RSMo 2000 unless otherwise indicated.

2. Section 491.075.1 provides:

mother, Happel, and Ringgold each testified as to the boy's statements. After hearing the proposed testimony, the trial court overruled Biggs's objections and held that there were sufficient indicia of reliability to permit the proposed witnesses to testify pursuant to section 491.075. Just before trial, the court held a second hearing and determined that the testimony of Hancock, who was unavailable for the earlier hearing, also met the criteria of 491.075.

At trial, the witnesses testified to the following statements by the boy:

(1) Hancock, who was with the mother and child when he was picked up from Biggs' house, testified:

- The boy asked if he could lie down, saying "that his bottom hurt, that he had bruises."
- The boy said, "I have bruises on my bottom. My dad whopped my butt."
- The boy "that he boo-booed on himself, and his daddy made him go take a shower to get cleaned up. He was made to come into the bedroom naked, to bend over the bed, and Daddy whooped his bottom with a belt."
- When asked about where Biggs' wife was, the boy answered: "She was in the living room."
- In response to the mother's saying she was going to call the police, the boy said: "Don't call the police. My daddy will get mad and spank me."

(2) The mother testified:

- The boy said: "He has a bruise"

- He told his mother: "Mommy, I have a bruise."
- The boy said: "I'm scared."
- He said: "Daddy whopped me with a belt."

(3) Ringgold testified:

- The boy said "he often gets spankings because he has accidents. He is told to take a bath or shower, put pajamas on, sit on a couch. And then when his father calls him into his room, he goes into his father's room and receives spankings."
- The boy reported that "[spankings] happen every day."
- When asked how his father spanked him the boy answered—"with a belt."

In addition to the above hearsay statements, the trial court also admitted the videotaped interview that Happel conducted with the boy at the Children's Advocacy Center. The jury watched the video.

The boy took the stand and testified that he never showed his mother or Hancock anything on his body. He also testified that he did not know if he had any bruises on his body; he did not remember the Happel interview; he never had any accidents when he visited his father, and he did not remember if anyone ever hit him. The boy was unable to recall any information concerning the abuse, his reporting of the abuse, his videotaped interview or the police investigation.

The jury found Biggs guilty of child abuse and the trial judge sentenced him to

A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provides sufficient indicia of reliability

. . . .

a seven-year prison term. Biggs directly appealed to this Court, which has jurisdiction. Mo. Const. art. v., sec. 3.

## I. Biggs's Constitutional Challenges to Section 491.075

█ The constitutional validity of a statute is a question of law to be reviewed de novo. *City of Arnold v. Tourkakis*, 249 S.W.3d 202, 204 (Mo. banc 2008).

Section 491.075 allows the hearsay statements of a minor less than 14 to be admitted as substantive evidence if:

(1) Defendant is charged with committing a violation of RSMo Chapters 565, 566, 568 or 573;

(2) The statements relate to the offense;

(3) The child either testifies, or is unavailable as a witness, or is otherwise physically available as a witness but the court finds that significant emotional or psychological trauma would result from testifying in the personal presence of the defendant.

Section 491.075, RSMo Supp 2006. Pursuant to this statute, the child's mother, Hancock, Ringgold and Happel testified regarding the boy's statements concerning his father's abuse.

Biggs argues that section 491.075 is unconstitutional because: (1) it violates the confrontation clause, (2) it violates Biggs's due process rights and (3) it violates Biggs' right to equal protection of the law.

### A. Confrontation Clause

█ The Sixth Amendment's confrontation clause says, "In all criminal prosecu-

tions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Missouri Constitution echoes this statement, guaranteeing that "in criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face." Mo. Const. art. I, sec. 18(a).

█ If a witness does not testify at trial, prior testimonial statements are admissible "only where the declarant is unavailable and only where defendant has had a prior opportunity to cross-examine." *State v. Perry*, 275 S.W.3d 237, 242 (Mo. banc 2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). If, however, the declarant testifies at trial, there are no constraints on the use of his prior testimonial statements. *Id.*

Biggs admits that his son was available to testify, but argues that he was "unavailable" because of his testimony that "he could not remember," "it did not happen" or "he did not know" to all essential elements of the offense. Biggs argues that because the boy was essentially unavailable, Biggs was denied his opportunity for meaningful cross-examination of his son and, therefore, the admission of the section 491.075 testimony violates the confrontation clause.

█ The fact that a witness's testimony is unsatisfactory does not render the witness unavailable.[3] The confrontation clause only guarantees "an opportunity for effective cross-examination, not cross-ex-

---

3. Biggs argues that *State v. Jankiewicz*, 831 S.W.2d 195, 197–99 (Mo. banc 1992), holds a child being "unresponsive" makes him "unavailable" for purposes of the *Crawford* analysis. Biggs is incorrect—*Jankiewicz* is not applicable. In *Jankiewicz*, the discussion of when a child was available was dicta—the case was remanded for consideration of new case law. *Id.* Moreover, *Jankiewicz* is distinguishable. The child in *Jankiewicz* was un-

cooperative and unresponsive. *Id.* She did not "provide any meaningful testimony that could be the subject of effective cross examination." *Id.* Here, the boy was cooperative, provided answers to Biggs's questions, and provided a meaningful basis for cross-examination. The boy's testimony was not what Biggs wished it would be—but that alone does not render the boy unavailable pursuant to *Crawford.*

amination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). Because the child was on the stand, answered Biggs' attorney's questions and was cooperative, the boy was available. Superficially, of course, the boy's testimony at trial was favorable to his father, but the jury obviously did not believe it. In any event, the evidence did not violate the confrontation clause.

### B. Due Process

■ Biggs argues that section 491.075 is unconstitutional because it violates the due process clause by allowing a criminal defendant to be convicted on unreliable and incompetent evidence. U.S. CONST. amend. V.; U.S. CONST. amend. XIV; Mo. CONST. art. I, sec. 10. It should be noted that section 491.075 requires the court to find that the "content and circumstances of the statement provide sufficient indicia of reliability." Section 491.075. In the section 491.075 hearing the trial judge found that the hearsay statements were reliable, and the record supports that conclusion. Biggs, therefore, was not convicted on "unreliable or incompetent evidence." Because the evidence was reliable, the allegation of a due process violation fails.

■ Moreover, "the prevalent theme in due process cases is that in a criminal prosecution the accused must be allowed to present a complete defense." *State v. Williams,* 729 S.W.2d 197, 200 (Mo. banc 1987); *State v. Wright,* 751 S.W.2d 48, 53 (Mo. banc 1988). This Court has held that admitting evidence under section 491.075 does not prevent a defendant from presenting a complete defense. *Wright,* 751 S.W.2d at 53. Biggs presented a complete defense to the jury. His due process rights were not violated.

### C. Equal Protection

■ Biggs next claims that section 491.075 violates the equal protection clause of the 14th Amendment that says no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

Biggs argues that section 491.075 affects the right to be proven guilty beyond a reasonable doubt of every fact necessary to constitute a crime, a right Biggs argues is fundamental for equal protection purposes. This Court need not reach the equal protection question because section 491.075 does not implicate the right to be proven guilty beyond a reasonable doubt— the statute in no way diminishes the state's burden of proving every element of the crime.

Section 491.075 serves a legitimate state purpose and does not violate the equal protection clause.

### II. Biggs's Non–Constitutional Claims

Biggs argues that section 491.075 allows improper bolstering of his son's testimony as well as that of the witnesses who testified in the section 491.075 hearing. Biggs also argues that the trial court committed error in not submitting to the jury his proposed jury instruction on the lesser-included crime of third-degree assault, and he argues that there was insufficient evidence to justify the guilty verdict.

### A. Improper Bolstering [4]

■ Biggs argues that admitting the testimony of the mother, Hancock, Ringgold and Happel is improper bolstering because each of these witnesses' testi-

---

4. Biggs frames this claim of error as a constitutional issue. But the cases Biggs cited in support of his argument treat the bolstering argument as an evidentiary issue, which it is.

mony is duplicative of his son's testimony as well as each other's testimony.

■ Section 491.075 does not encourage improper bolstering. "Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." *State v. Seever,* 733 S.W.2d 438, 441 (Mo. banc 1987). Section 491.075 testimony is not duplicative of the boy's testimony. The boy's out-of-court statements possess different strengths and weaknesses than a child's in-court statements. *State v. Bunch,* 289 S.W.3d 701, 705 (Mo. App. S.D.2009); *State v. Gaines,* 316 S.W.3d 440, 451 (Mo.App. W.D.2010); *State v. Gollaher,* 905 S.W.2d 542, 546 (Mo.App. E.D.1995). For example, during the boy's videotaped interview he testified that his father "whooped him" and he got "whooped every day and night." At trial, however, the boy testified that he did not remember the interview and that he "did not know" whether his father ever hit him. As this testimony indicates, the boy's in-court and out-of-court statements are substantially different and are not duplicative.

Each witness's testimony regarding the boy's statements is not duplicative of any other witness's testimony as to the boy's statements. A witness's testimony as to his or her own recollection of the child's statements as well as the circumstances surrounding the making of that statement necessarily will be different than that of an alternative witness. *State v. Redman,* 916 S.W.2d 787, 792 (Mo. banc 1996). Admitting the section 491.075 testimony was not improper bolstering.

### B. Jury Instructions

■ Biggs argues that the trial court erred in not submitting his proposed jury instruction on the lesser-included offense of third-degree assault.

A trial court must give any jury instruction that is supported by evidence and law. Rule 70.2; *Vandergriff v. Mo. Pac. R.R.,* 769 S.W.2d 99, 104 (Mo. banc 1989). The trial court here did not have to give a jury instruction on third-degree assault because third-degree assault is not a lesser-included offense of child abuse.

A lesser-included offense must meet the following qualifications:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It is specifically denominated by statute as a lesser degree of the offense charged; or

(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

Section 556.046.1(1).

To prove abuse of a child—the crime with which Biggs was charged—the state had to show that Biggs (1) knowingly inflicted (2) cruel and inhuman punishment (3) on a child younger than 17. Section 568.060. To prove third-degree assault the state would have to show that Biggs (1) recklessly (2) caused physical injury (3) to another person.[5] Section 565.070(1).

Third-degree assault requires proof of physical injury—abuse of a child does not. Abuse of a child requires establishment of cruel and inhuman punishment as well as the age of the victim—third-degree assault does not. Third-degree assault cannot be

**5.** Biggs proposed a jury instruction articulating the elements of third-degree assault as "recklessly caused physical injury to [the boy] by striking him with a belt." Proposed Jury Instruction No. A. Third degree assault can be shown many other ways but as Biggs proposed this definition, and argues that the trial court was in error for not submitting this Instruction A, this is the definition that is analyzed. *See* section 565.070.

established by the same or fewer facts as abuse of a child.

### C. Sufficiency of the Evidence

Biggs also challenges the sufficiency of the evidence. "In deciding whether the evidence is sufficient to convict a defendant of a particular offense, the appellate court must consider the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregard all inferences to the contrary." *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). The state adduced sufficient evidence that Biggs knowingly inflicted cruel and inhuman punishment on a child younger than 17.

The child's mother, Happel, Ringgold and Hancock all testified that the boy told them that his father, Biggs, "whooped him," causing the bruises.[6] Additionally, Biggs and his wife testified that he spanked his son. This is sufficient evidence to show that Biggs was the cause of the boy's injuries. The state presented photographs, taken by Ringgold during his interview, of black, purple, green and yellow bruising on the boy's buttocks down to the tops of his thighs. This Court previously has held that evidence of persistent bruising is sufficient to show "cruel and inhuman punishment." *Sumowski*, 794 S.W.2d at 645. Because the state introduced evidencing that, if believed, proved each element of the charged offense, there was sufficient evidence to convict Biggs of abuse of a seven-year-old child.

### Conclusion

The admission of the evidence regarding the child's out-of-court statements under section 491.075 did not violate Biggs's rights under the Sixth and 14th amendments. The evidence in the case was admissible and sufficient to support the jury's verdict, which was rendered after the jury had been instructed correctly.

The circuit court's judgment is affirmed.

All concur.

---

**6.** Biggs argues that without the "hearsay" statements of his son's mother, Happel, Ringgold and Hancock, there is insufficient evidence to convict Biggs. But, the statements of the mother, Happel, Ringgold and Hancock were properly admitted and, therefore, the Court can consider them to determine sufficiency of evidence.